IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03195-PAB

BOBBY SANSING,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

---

## ORDER

---

This matter is before the Court on plaintiff Bobby Sansing's complaint [Docket No. 1] filed on December 6, 2012.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## I.  BACKGROUND

On March 2, 2010, plaintiff applied for disability benefits under Titles II and XVI of the Act.  R. at 11.  Plaintiff alleged that he had been disabled since February 26, 2010.  *Id.*  After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on February 17, 2012.  *Id.*  On

---

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

March 28, 2012, the ALJ issued a decision denying plaintiff's claim. *Id.* at 19.

The ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the thoracic and lumbar spine." R. at 14. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id.* at 14-15, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he should never climb ladders, ropes or scaffolds and should occasionally climb stairs and ramps, balance, stoop, kneel, crouch or crawl; he should avoid concentrated exposure to temperature extremes and vibration and moderate exposure to unprotected heights; and the work should be no greater than semi-skilled." *Id.* at 15. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is capable of performing past relevant work as a convenience store clerk. *Id.* at 18-19.

On October 9, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's denial. *Id.* at 1. Therefore, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) applying the wrong legal standard in holding that plaintiff did not meet or equal a listed impairment, (2) improperly weighing medical opinions, (3) not developing the record at the hearing, (4) applying the wrong legal standard in assessing plaintiff's credibility, (5) applying the wrong legal standard in assessing plaintiff's RFC, and (6) improperly concluding that plaintiff is capable of performing past work as a convenience store clerk.  *See* Docket No. 13.

The relevant evidence of record is as follows.  In his application for disability benefits, plaintiff stated that he suffered from the following symptoms: "[h]erniated disk/sciatic nerve/legs give out/arm, hands numb."  R. at 172.  Shortly before plaintiff applied for disability benefits, plaintiff fell and fractured four ribs.  *Id.* at 219.  Plaintiff returned to work after the accident, but reported that he was "discharged or left off from work" sometime before March 5, 2010 due to an incident where the trailer to his truck swung into another lane.  *Id.* at 231.

In March 2010, plaintiff was examined by Dr. Neiland Olson regarding complaints of ringing type tinnitus.[2]  Dr. Olson noted that plaintiff's gait is "obviously quite defective."  R. at 295.  In May 2010, plaintiff underwent an MRI of the lumbar spine, which showed that he suffered from multilevel degenerative disk disease and a disk

---

[2]Tinnitus is "[p]erception of a sound in the absence of an environmental acoustic stimulus.  The sound can be a pure tone or noise including (ringing, whistling, hissing, roaring, or booming) in the ears."  Stedman's Medical Dictionary tinnitus (27th ed. 2000).

herniation resulting in "left foraminal and left lateral recess stenosis[3] affecting the left L5 and left S1 nerve roots." *Id.* at 255.  In June 2010, Dr. Mark Carroll noted that plaintiff had an "L5-S1 disc bulge with nerve root impingement" and referred plaintiff to another doctor for pain management.  *Id.* at 261-262.  A note in plaintiff's file dated June 21, 2010 indicates that plaintiff ceased treatment with Dr. Carroll because he could not afford to come in for a follow-up appointment.  *Id.* at 257.

In November 2010, Dr. Dowin Boatright performed a consultative examination of plaintiff at the request of the state agency.  R. at 279-85.  Dr. Boatright noted that plaintiff "appeared to sit comfortably" during the examination, but that plaintiff had difficulty hearing.  *Id.* at 281.  Dr. Boatright further noted that plaintiff had a "slow rate of gait," displayed "some hesitancy" and could not "walk heel-to-toe without loss of balance," though plaintiff did not use any assistive device at the examination.  *Id.* at 282.  Plaintiff showed some discomfort in his hip joints and pain with internal rotation on his right shoulder, but otherwise had normal range of motion in all areas examined.  *Id.* at 282-83.  Dr. Boatright found that plaintiff had tenderness to palpation of the thoracic spine, but no tenderness to palpation of the cervical, lumbar, or sacral spinous processes, *id.* at 283, that plaintiff was sensate to soft touch, and his strength rated 5/5 at the upper and lower extremities.  *Id.* at 284.  Based on this examination, Dr. Boatright found that there are no limitations on the number of hours that plaintiff could sit or stand during an eight-hour work day.  *Id.*  Dr. Boatright recommended postural limitations, including limitations on "bending, squatting, and crawling secondary to [plaintiff's]

---

[3]Stenosis is a "stricture of any canal or orifice."  Stedman's Medical Dictionary stenosis (27th ed. 2000).

degenerative changes in his back," and environmental limitations, including limitations on unprotected heights and areas requiring sensitive hearing, but found that plaintiff was otherwise unlimited and should be able to lift twenty-five pounds frequently. *Id.*

In December 2010, Dr. Alicia Blando, a state agency physician, reviewed plaintiff's medical file and found that plaintiff could lift twenty-five pounds frequently, could stand and sit about six hours in an eight-hour workday, could climb ramps or stairs only occasionally, could never climb ladders, ropes, or scaffolds, could only occasionally perform balancing, stooping, kneeling, crouching, or crawling, had no manipulative or visual limitations, and that plaintiff's hearing was limited. R. at 52-53. Dr. Blando recommended that plaintiff should avoid concentrated exposure to extreme temperatures and vibration and should avoid all exposure to hazards such as machinery and heights. *Id.* at 53-54.

In February 2012, physical therapists Michael Moore and Barbara Kelly performed a functional capacity evaluation of plaintiff at the recommendation of plaintiff's counsel. *See* R. at 308-29. Mr. Moore and Ms. Kelly noted that plaintiff gave a "conditionally reliable effort," and listed various functional limitations, including an inability to "Stoop, Crouch, Kneel, Climb Stairs, Reach Immediate (L), Reach Overhead (L), Reach Overhead (R), [and] High Lift." *Id.* at 308. Mr. Moore and Ms. Kelly noted that plaintiff had limited range of motion at the lumbar spine, knee, ankle, and wrists, and had poor tolerance to sitting and standing for extended period of time, requiring frequent position changes. *Id.* They stated that plaintiff was capable of performing low lifting at the sedentary level, mid lifting, pushing, pulling, and carrying at the light level, could reach with the right arm frequently, and occasional walking, carrying up to 20

7

pounds, handling, fingering, sitting, and standing. *Id.*

At the February 17, 2012 hearing, plaintiff testified that he occasionally drove to doctor's appointments and the grocery store, R. at 29, that he had taken a single automobile trip in the previous 24 months where he drove or rode in the car two to three hours per day, *id.* at 29-30, that he had been on unemployment insurance until shortly before the hearing, and that during that time he had represented that he was able to work and had attempted unsuccessfully to obtain work as a shipping broker. *Id.* at 32-34. Plaintiff testified that this job would not have required him to stand more than a couple of hours each day and would have allowed him to work from home and set his own schedule. *Id*. at 35.

### 1. Medical Listing 1.04(A)

Plaintiff argues that the ALJ erred in finding that plaintiff's symptoms do not meet or medically equal listing 1.04(A). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Listing 1.04(A) describes "[d]isorders of the spine (e.g., . . . degenerative disc disease . . .), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" 20

C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

The ALJ found that plaintiff did not meet listing 1.04(A) because the medical evidence showed nerve root "impingement" rather than compression, full range of motion in the back, "excellent (5/5) muscle strength throughout, and no neurological deficits." R. at 15. Plaintiff argues that the distinction that the ALJ drew between nerve impingement and nerve compression is not recognized by the regulations, which refer interchangeably to impingement and compression, and that the ALJ ignored the results of plaintiff's functional consultative exam. Docket No. 13 at 15.

The Court finds that the ALJ did not err in finding that plaintiff's symptoms do not meet listing 1.04(A). In particular, the Court finds that the ALJ applied the correct legal standard in finding that plaintiff did not suffer from limitation of motion in the spine and did not suffer from muscle weakness as specified in the listing, and that this finding is supported by substantial evidence. As plaintiff argues, the ALJ is required to "consider all evidence in [the] case record" in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(3). The record does not reflect that the ALJ ignored any evidence in reaching his conclusion. "When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, No. 11-cv-00105-PAB, 2012 WL 1079229, at *4 (D. Colo. Mar. 30, 2012).[4] The ALJ explained that Dr. Boatright's

---

[4]The factors, as outlined in 20 C.F.R. § 404.1527(c)(2)-(6) include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an

opinion, other than his contentions regarding plaintiff's hearing, were well supported by his findings and other objective evidence in the record, R. at 17, and that the state agency physician's opinion likewise was "well supported and consistent with the objective evidence of mild lumbar disease and mild nerve root impingement, as well as the clinical findings of excellent strength, normal neurological functioning, normal movements of the spine, arms and legs, and equivocal gait observations[.]"  R. at 17.

Plaintiff argues that the ALJ ignored the results of the functional consultative exam performed by Mr. Moore and Ms. Kelly.  Docket No. 13 at 15.  The Court disagrees.  Mr. Moore and Ms. Kelly are classified as "other sources" from which evidence can be considered to show the severity of a claimant's impairment and how it affects his ability to work.  20 C.F.R. § 416.913(d).  "Opinion evidence from 'other sources' is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006)." *Conger v. Astrue*, 453 F. App'x 821, 824 (10th Cir. 2011).[5]  The ALJ is not required to discuss each factor outlined in 20 C.F.R. § 416.927(d), *id.* at 825, or explain the reasons for the weight given to "other sources."  *Id.*  Nonetheless, the ALJ did explain that he gave Mr. Moore's and Ms. Kelly's conclusions from their examination of plaintiff

---

opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."  *Siegle v. Barnhart*, 377 F. Supp. 2d 932, 940 n.5 (D. Colo. 2005) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[5]The factors include: (1) the length of time the source has known the claimant and how frequently the source has seen the claimant; (2) the consistency of his opinion with other evidence; (3) whether there is relevant evidence to support the opinion; (4) how well the opinion is explained; (5) the source's qualifications; and (6) any other factors that tend to support or detract from the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

little weight and articulated his reasons for doing so.  The ALJ noted that Mr. Moore and Ms. Kelly wrote that plaintiff gave a "conditionally reliable effort" and failed pinch and grip profiles.  R. at 18.  Mr. Moore and Ms. Kelly explained that failing the pinch and grip profiles is "an indicator of submaximal effort."  *Id.* at 308.  The ALJ further explained that he gave little weight to Mr. Moore and Ms. Kelly's opinion because of the "dependence upon [plaintiff's] decision as to whether he was capable of performing some of the exercises" and "the discrepancy between the range of motion exhibits during the test and that produced at the consultative evaluation and at physical examinations performed by his primary care providers."  *Id.* at 18.

The medical opinions to which the ALJ gave weight constitute substantial evidence for his finding.  Because the Court finds that the ALJ did not err in finding that plaintiff did not meet at least one of listing 1.04(A)'s criteria – namely, limitation of motion of the spine – the Court need not address the other criteria.  *Sullivan,* 493 U.S. at 530.

Plaintiff also argues that the ALJ erred in not considering whether plaintiff, due to his obesity, medically equals listing 1.04(A).  Docket No. 13 at 17.  The Court disagrees.  Although the ALJ is required to consider whether a claimant's obesity, in combination with other limitations, is "equivalent in severity to a listed impairment," SSR 02-1p, 2002 WL 34686281 at *5 (Sept. 12, 2002), an ALJ may not "make assumptions about the severity or functional effects of obesity combined with other impairments."  *Id.* at *6.  In this case, the ALJ considered the fact that plaintiff is obese, but noted that plaintiff "did not discuss work-related limitations related to obesity when he met with any treating source and he provided no testimony concerning the effect of obesity on his

ability to work." R. at 14. Based on this, the ALJ found no evidence that obesity limits plaintiff's ability to work. Although the ALJ did not repeat this analysis in his determination that plaintiff does not suffer from an impairment or combination of impairments that medically equals a listing, the record reflects that the ALJ sufficiently considered the effect of plaintiff's obesity. *See Huffman v. Colvin*, 2013 WL 5304053 at *11 (D. Kan. Sept. 20, 2013) (finding no error in assessment of whether a plaintiff medically equaled a listing where plaintiff "has not presented evidence her obesity significantly limits her physical or mental ability to perform basic work activities.").

### 2. *Weight Given to Medical Opinions*

Plaintiff argues that the ALJ erred in the weight he afforded to Dr. Boatright's opinion. First, plaintiff argues that the ALJ erred in rejecting the portion of Dr. Boatright's opinion that plaintiff should be restricted from tasks requiring sensitive hearing. Docket No. 13 at 18. The Court disagrees. ALJs are instructed to consider several factors in deciding how much weight to give a medical opinion, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the degree to which the physician's opinion is supported by relevant evidence, consistency between the opinion and the record as a whole, specialization, and other factors tending to support or contradict the opinion. *Drapeau*, 255 F.3d at 1213. The ALJ noted that Dr. Boatright's opinion regarding plaintiff's hearing was based on a general assessment of plaintiff's responsiveness, whereas an audiogram performed in March 2010 at the Colorado Hearing and Balance Clinic showed that plaintiff had 100% word discrimination. R. at 17 (citing R. at 295). Although, as plaintiff points out, an ALJ "is not entitled to pick and choose through an

uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), Dr. Boatright's opinion was not uncontradicted.   The Court cannot conclude that the ALJ erred in concluding that Dr. Boatright's opinion of plaintiff's hearing, rendered at a general consultative examination, was entitled to less weight than the audiogram that specifically evaluated plaintiff's hearing.

Second, plaintiff argues that Dr. Boatright's opinion should have been given little weight because it contains "internal inconsistencies."   Docket No. 13 at 19.[6]   Plaintiff argues that Dr. Boatright's functional assessment "failed to account for [plaintiff's] noted pain on internal rotation of his right shoulder," and that his assessment that plaintiff could sit and stand without limitations was inconsistent with plaintiff's "slow, waddling gait."   Docket No. 13 at 19.   The Court disagrees, and in any event, re-weighing the evidence is beyond the Court's purview on an appeal of the Commissioner's decision. *Flaherty*, 515 F.3d at 1070.   Plaintiff provides no reason why, having found that plaintiff suffers from certain symptoms, Dr. Boatright was required to conclude that those symptoms created corresponding functional limitations.   As the Commissioner argues, Docket No. 16 at 19, there is no inherent inconsistency with finding that plaintiff suffers some pain on internal rotation of the shoulder but is nonetheless capable of performing reaching tasks, or that plaintiff has an abnormal or wobbly gait yet is still able to sit and

---

[6]Plaintiff also argues that the ALJ erred affording little weight to the opinion of Mr. Moore and Ms. Kelly as to plaintiff's functional limitations.   Docket No. 13 at 19.   As discussed above, the ALJ was not required to specify the weight he assigned to opinions that were not from acceptable medical sources, but the ALJ nevertheless did so and provided sufficient reasoning for his decision to discount Mr. Moore and Ms. Kelly's opinion.

stand for extended periods of time.

Finally, plaintiff argues that Dr. Boatright's opinion was "stale" and should have been rejected in favor of Mr. Moore and Ms. Kelly's more recent opinion.  Docket No. 13 at 20.  Plaintiff argues that the facts of this case are similar to those in *Chapo v. Astrue*, 682 F.3d 1285, (10th Cir. 2012), where the Tenth Circuit found that an ALJ committed error in rejecting a more recent treating physician's opinion in favor of a "patently stale" opinion of an agency consulting physician.  *Id.* at 1293.  In *Chapo*, the court pointed to numerous instances where objective findings in the record "underwent material changes" between the two examinations and noted that the consulting physician whose opinion the district court adopted had not been provided "material objective evidence developed long after[]" his examination of the plaintiff.  *Id.* at 1292.  Here, plaintiff submitted no evidence beyond the opinion of Mr. Moore and Ms. Kelly that his symptoms underwent material changes between his 2010 and 2012 examinations and did not testify to any worsening of his symptoms at the hearing.  Accordingly, the Court finds that the 2012 examination did not render the opinions of Drs. Boatright and Blando "stale," and the ALJ did not err in adopting the findings of those opinions.

### 3.  Developing the Record

Plaintiff argues that the ALJ failed to develop the record sufficiently because the ALJ did not ask plaintiff sufficient questions at the hearing.  Docket No. 13 at 20. Specifically, plaintiff argues that the ALJ's failure to ask plaintiff questions "regarding his impairments or their resultant work related limitations" is reversible error.  *Id.*  Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ to

ensure that an adequate record is developed . . . consistent with the issues raised,"
*Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quotations omitted),
plaintiff's mere assertion that the record is insufficient is not grounds for reversal.  A
claimant establishes the presence of an issue requiring further investigation by
submitting "some objective evidence . . . suggesting the existence of a condition which
could have a material impact on the disability decision requiring further investigation."
*Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  Plaintiff must satisfy his
burden in this regard before the ALJ's duty to develop the record is implicated.  Here,
plaintiff detailed his symptoms and resulting limitations in two questionnaires, *see* R. at
185-90, and plaintiff does not provide evidence or otherwise suggest that these
questionnaires were not an adequate representation of his condition.  The ALJ
supplemented plaintiff's questionnaires with questions about plaintiff's daily activities,
*see id.* at 29-30, and asked plaintiff at length about his representation that he was
ready, willing, and able to work, which was made for the purpose of obtaining
unemployment insurance.  *See id.* at 31-34.  Moreover, where, as here, plaintiff is
represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's
counsel to structure and present claimant's case in a way that the claimant's claims are
adequately explored" and to "identify the issue or issues requiring further development."
*Hawkins*, 113 F.3d at 1167-68 (citations omitted).

The Court finds that plaintiff has failed to meet his burden of showing an issue
that required further development.  Simply pointing out that the testimony that the ALJ
elicited from plaintiff concerning his view of his functional limitations was not extensive

is insufficient for the Court to conclude that any alleged failure by the ALJ to develop

the record had a material impact on the disability decision such that further investigation

was required.

### 4. Credibility Determination

Plaintiff argues that the ALJ committed error in basing his credibility

determination on plaintiff's lack of treatment.  "Credibility determinations are peculiarly

the province of the finder of fact" and the Tenth Circuit will uphold such determinations,

so long as they are supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387,

391 (10th Cir. 1995).  Credibility determinations may not be conclusory, but must be

"closely and affirmatively linked" to evidence in the record.  *Id.*  In assessing a

claimant's credibility, an ALJ must consider the following factors, in addition to the

objective medical evidence:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4)

("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

The ALJ cited as the basis for his credibility finding "the absence of compelling objective evidence or clinical findings, [plaintiff's] conservative care and lack of regular treatment," and the ALJ's determination of the validity of plaintiff's functional capacity evaluation, which described only a "conditionally reliable effort." R. at 18 (referencing *id.* at 308). Plaintiff points to only one of the factors considered by the ALJ, the lack of regular treatment, as being invalid, and notes that the record contains reference to plaintiff being unable to afford care. Docket No. 13 at 22.

Although plaintiff is correct that inability to afford care can excuse a plaintiff's failure to receive regular treatment, *see* SSR 96-7p, 1996 WL 374186 at *8, the Court finds that the ALJ's credibility determination is nonetheless supported by substantial evidence. The ALJ found that plaintiff's subjective complaints were inconsistent with the medical evidence, which noted that he was able to perform numerous activities without pain, and further noted that plaintiff's functional capacity evaluation suggested that he was not giving reliable effort. The inconsistency between plaintiff's subjective complaints and Dr. Boatright's assessment of the plaintiff's capacity and the notation that plaintiff's effort was only "conditionally reliable" constitute substantial evidence for

the ALJ's credibility finding.[7]

### 5.  Past Work

Plaintiff argues that the ALJ erred in concluding that plaintiff was capable of performing past work as a convenience store clerk because the ALJ did not include any reaching or hearing limitations in his hypothetical to the VE.  Docket No. 13 at 25.  The Court disagrees.  As discussed above, the Court finds that the ALJ did not err in discounting Dr. Boatright's findings concerning plaintiff's hearing limitations.  Moreover, the Court has found that the ALJ did not err in affording little weight to the functional capacity evaluation, which was the only opinion from any treating source that called for reaching limitations.  Accordingly, the ALJ did not err in failing to relate these limitations to the VE.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Bobby Sansing was not disabled is **AFFIRMED**.

---

[7]Plaintiff also argues that the ALJ erred in not properly considering plaintiff's subjective complaints of pain.  Docket No. 13 at 23-24.  The Court disagrees.  The ALJ's credibility determination specifically discussed plaintiff's "claims that his pain prevents him from sustaining even light exertional activities," R. at 18, and concluded that this claim was inconsistent with the medical findings of Dr. Boatright and the state agency consulting physician.  *Id.*

DATED January 28, 2015.

BY THE COURT:


 s/Philip A. Brimmer                              
PHILIP A. BRIMMER
United States District Judge